IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

1)  RAFEL GENE McDOUGAL,                    )
                                            )
         Plaintiff,                         )
                                            )
v.                                          )       Case No. 17-cv-00449-GKF-mjx
                                            )       *(formerly Tulsa County District Court*
1)  GEICO CASUALTY COMPANY,                 )        *Case No. CJ-2017-1969)*
    (Government Employees Insurance         )
    Company)                                )
                                            )
         Defendant.                         )

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant, GEICO Casualty Company ("GEICO"), hereby removes the above-captioned action from the District Court of Tulsa County, State of Oklahoma, to this Court.  Pursuant to LCvR 81.2, a copy of the state court docket sheet as well as all documents filed or served in the state court action are attached hereto as **EXHIBITS 1-23**.

The removal of this case to federal court is based on the following:

### PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

1.      Plaintiff, Rafel Gene McDougal ("Plaintiff"), commenced this bad faith action against GEICO in the District Court of Tulsa County, State of Oklahoma (Case No. CJ-2017-1969), on or about May 19, 2017.  (*See generally*, Petition, **EXHIBIT 2**.)

2.      Plaintiff alleges that he was injured in an automobile accident on March 13, 2013.[1] (*See* Petition, ¶ 1, **EXHIBIT 2**.)

---

[1]According to the police report, the accident actually occurred on March 12, 2013.  (*See* EXHIBIT A to Plaintiff's Petition, **EXHIBIT 2**.)

3.      At the time of the accident, GEICO issued an insurance policy that afforded Plaintiff UIM coverage.  According to Plaintiff, that policy was GEICO Policy No. 4398-95-88-87.[2]  (*See* Petition, ¶ 1, **EXHIBIT 2**.)

4.      On February 13, 2015, Plaintiff filed suit against the alleged tortfeasor ("Plaintiff's First Lawsuit").  Plaintiff's First Lawsuit was styled *Rafel Gene McDougal v. Douglas Van Dam, deceased, et al.*  (*See* OSCN Docket Sheet, Tulsa County Case No. CJ-2015-614, **EXHIBIT 24**.)

5.      On or about March 13, 2015, Plaintiff's attorney notified GEICO that Plaintiff may be making a UIM claim.  (*See* Petition, ¶ 3; EXHIBIT A to Petition, **EXHIBIT 2**.)  It appeared that Plaintiff was also placing GEICO on notice of the lawsuit pending against the alleged tortfeasor.  More specifically, Plaintiff's counsel informed GEICO that "[GEICO's] subrogation right has been protected." (EXHIBIT A to Petition, **EXHIBIT 2**.)

6.      Shortly thereafter, GEICO acknowledged Plaintiff's claim and requested information to begin its investigation to determine if there was potential UIM exposure.  (*See* Petition, ¶¶ 4-5, **EXHIBIT 2**.)

7.      Two months later, Plaintiff finally responded to GEICO's request and provided the information he believed GEICO needed to evaluate his claim.  (*See* Petition, ¶ 6, **EXHIBIT 2**.)

8.      On May 20, 2015, after reviewing the available information, including the documents Plaintiff submitted, GEICO determined the value of his claim was within the tortfeasor's limits,[3] and therefore, Plaintiff had not submitted a valid UIM claim.  (Petition, ¶ 9, **EXHIBIT 2**.)

---

[2]The policy was actually GEICO Policy No. 4298-95-88-87.  (*See* EXHIBIT B-2 to Petition, **EXHIBIT 2**.)

[3]Prior to the filing of this lawsuit, the tortfeasor's insurer would only confirm that there was <u>at least</u> $100,000 in coverage available. Accordingly, GEICO evaluated Plaintiff's claim based on the assumption that the tortfeasor's liability limits were $100,000. GEICO has since learned that the tortfeasor had liability limits of $250,000.  Therefore, to assert a valid UIM claim, Plaintiff actually had to demonstrate that the value of his claim exceeded $250,000, not $100,000.

9.     Plaintiff disagreed with GEICO's evaluation and demanded that GEICO inform him of the "monetary valuation GEICO had placed upon Plaintiff's injuries and claims." (*See* Petition, ¶¶ 10, 12, 14, **EXHIBIT 2**.)

10.    GEICO resisted Plaintiff's demand explaining that Oklahoma law, as discussed in *Newport v. USAA*, 2000 OK 59, 11 P.3d 190, allowed an insurer to negotiate with its insured.  And, if the insurer disclosed its evaluation range, negotiations would be pointless because the insured would always demand the top dollar.  (*See* Petition, ¶¶ 11, 13, 15, **EXHIBIT 2**.)

11.    In December 2015, GEICO, through its UIM counsel, informed Plaintiff's counsel that it was still monitoring Plaintiff's action against the tortfeasor.  But, GEICO, through its UIM counsel, would like to conduct its own investigation in the case.[4]  (*See* Petition, ¶ 18, **EXHIBIT 2**.)

12.    Plaintiff refused to cooperate in GEICO's continued investigation because, in his counsel's opinion, the "time for GEICO to conduct its 'investigation' and its 'evaluation' in good faith had passed."  (*See* Petition, ¶ 19, **EXHIBIT 2**.)

13.    When Plaintiff refused to cooperate in GEICO's continued investigation, GEICO requested leave to intervene in the action Plaintiff filed against the alleged tortfeasor.  (*See* Petition, ¶ 20, **EXHIBIT 2**.)

14.    After receiving permission from the Court, GEICO filed an Answer to Plaintiff's Petition.  (*See* Petition, ¶ 21, **EXHIBIT 2**.)

15.    On April 25, 2016, Plaintiff filed his Motion to Reconsider and Vacate Order Allowing Intervention.  In that Motion, Plaintiff took the position that he had not given GEICO

---

[4]GEICO was under the impression that Plaintiff intended to place it on notice of the action against the alleged tortfeasor in order to collect any excess judgment he may obtain against the tortfeasor. Therefore, regardless of its initial evaluation, under *Keel*, GEICO may have been liable for any excess judgment. Accordingly, GEICO was continuing its investigation into Plaintiff's claim.

notice of his action against the tortfeasor, and therefore, GEICO would not be bound by any judgment entered.  Specifically, Plaintiff argued:

> In its reply, GEICO cited the case of *Keel v. MFA Insurance Company*, 1976 OK 86, 553 P.2d 153. In paragraph 28 of that case, the Oklahoma Supreme Court set out four ways that a Plaintiff may proceed in an action against a tortfeasor, where the Plaintiff has UM coverage. . . The four choice an insured under the uninsured motorist coverage has is:

>> "(4) He may file an action against the uninsured motorist and give no notice to the insurance company."

> This is the action taken by the Plaintiff in the case at bar. The court goes on to state in paragraph 29 "Only in option four is the insurance company not bound by the judgment."

> . . .The evidence will show that GEICO was not put on notice of this case by Plaintiff, its insured, and that Plaintiff elected to proceed against the tortfeasor as outlined in option (4) set out in paragraph 28 of *Keel v. MFA Insurance Company, supra.* There is no basis for GEICO's argument it has presented for intervention.

(*See* Plaintiff's Motion to Vacate Order Allowing Intervention, Tulsa County Case No. CJ-2015-614, EXHIBIT 3 to GEICO's Motion to Dismiss, **EXHIBIT 5**.)

16.     On May 31, 2016, Plaintiff's Motion to Vacate came before the Court.  Based upon Plaintiff's counsel's representations that Plaintiff was waiving any claim for underinsured motorist payments, the court vacated its Order allowing GEICO to intervene and dismissed GEICO from Plaintiff's First Lawsuit.  (*See* Order, dated June 22, 2016, Tulsa County Case No. CJ-2015-614, EXHIBIT 4 to GEICO's Motion to Dismiss, **EXHIBIT 5** .)

17.     On May 19, 2017, Plaintiff filed the present lawsuit asserting GEICO acted in bad faith by "fail[ing] and refus[ing] to investigate and evaluate" his claim and by improperly seeking to intervene in his action against the tortfeasor.  (*See* Petition, ¶¶ 2-27, **EXHIBIT 2**.)

18.     Plaintiff's Petition demands "judgment of and from the Defendant for actual and punitive damages, plus interest, the cost of this action and attorney's fees, in an amount in excess of $10,000.00, but not in excess of the amount required for diversity jurisdiction, pursuant to § 1332 of Title 28 of the United States Code."  However, as discussed below, since the filing of Plaintiff's Petition, it has become patently obvious that Plaintiff is actually seeking damages in excess of $75,000.00.

19.     On or about June 12, 2017, Plaintiff served GEICO with this lawsuit. (*See* Transmittal Correspondence from the Oklahoma Department of Insurance to GEICO, dated June 12, 2017, **EXHIBIT 25**.)

20.     June 30, 2017, GEICO filed a Special Entry of Appearance and Motion to Dismiss, as well as a Special Entry of Appearance and Motion to Transfer and a Special Entry of Appearance and Motion to Clarify Damages.  (*See* Special Entry of Appearance and Motion to Dismiss, **EXHIBIT 5**; Special Entry of Appearance and Motion to Transfer, **EXHIBIT 6**; Special Entry of Appearance and Motion to Clarify Damages, **EXHIBIT 4**.)

21.     GEICO's Motion to Clarify Damages asserted that there was complete diversity between the parties and the claims asserted against GEICO could place in excess of $75,000.00 at issue.  Therefore, pursuant to 12 O.S. § 2009(H), for purposes of diversity jurisdiction, Plaintiff was required to prove to the preponderance of the evidence that his damages, if awarded, would not exceed $75,000.00.  (*See generally*, GEICO's Motion to Clarify Damages, **EXHIBIT 4**; GEICO's Reply in Support of His Motion to Clarify Damages, **EXHIBIT 13**.)

22.     On July 11, 2017, Plaintiff filed his objection to GEICO's Motion to Clarify Damages.  Plaintiff asserted that his "Offer to Accept Judgment" in the amount of $74,000.00 established that his damages, if awarded, would not exceed $75,000.00.  In reality, this simply

established that Plaintiff was willing to enter into a compromise settlement for $74,000.00, but did nothing to limit Plaintiff's potential recovery in this lawsuit.  Plaintiff provided no other "evidence" that would support his position.  (*See generally*, Plaintiff's Response to GEICO's Motion to Clarify Damages, **EXHIBIT 8**.)

23.     On July 27, 2017, GEICO's Motion to Clarify Damages was heard by the District Court of Tulsa County, State of Oklahoma.  (*See* OSCN Docket Sheet, **EXHIBIT 1**.)

24.     At said hearing, Plaintiff maintained his objection to GEICO's Motion to Clarify Damages. Plaintiff's counsel argued that without conducting discovery Plaintiff could not determine his damages.  More specifically, Plaintiff's counsel argued that after he obtained GEICO's claim file, he could calculate Plaintiff's damages, which may be extremely high, or he may learn that Plaintiff has little to no damages.[5]  (*See* Affidavit of E. Rooney, **EXHIBIT 26**.)

25.     After extended oral arguments, GEICO's counsel offered to simplify the matter for Plaintiff and the Court.  GEICO's counsel asserted that if Plaintiff was not seeking damages in excess of $75,000.00, as his counsel adamantly argued, and Plaintiff wanted to remain in state court, Plaintiff simply needed to stipulate that his damages, regardless of the amount ultimately awarded to the jury, would not exceed $75,000.00.  This would render GEICO's Motion moot and would conclusively establish this Court did not have jurisdiction over Plaintiff's lawsuit.  The Court then asked Plaintiff's counsel if Plaintiff would agree to the requested stipulation.  Plaintiff refused. (*See* Affidavit of E. Rooney, **EXHIBIT 26**.)

26.     The Court took GEICO's Motion to Clarify Damages under advisement. (*See* OSCN Docket Sheet, **EXHIBIT 1**.)

---

[5]Plaintiff's argument establishes that this lawsuit is by definition "frivolous."

27.    After the hearing on GEICO's Motion to Clarify Damages, GEICO's counsel sent Plaintiff's counsel correspondence informing Plaintiff that if he would stipulate that his damages, regardless of the amount awarded by the jury, would not exceed $75,000.00, GEICO would withdraw its Motion to Clarify Damages.  (*See* Correspondence from E. Rooney to R. Carpenter, dated July 28, 2017, **EXHIBIT 27**.)

28.    Plaintiff's counsel failed to respond to GEICO's counsel's request.  Instead, a few hours later, Plaintiff's counsel informed GEICO that Plaintiff would be requesting leave to file an Amended Response to GEICO's Motion to Clarify Damages to assert additional arguments in objection to GEICO's Motion to Clarify Damages.  (*See* Correspondence from R. Carpenter to E. Rooney, dated July 28, 2017, **EXHIBIT 28**.)

29.    On July 31, 2017, over GEICO's objection, (*see* Correspondence from E. Rooney to R. Carpenter, dated July 28, 2017, **EXHIBIT 29**), Plaintiff filed an Application for Leave to Amend his Response to GEICO's Motion to Clarify Damages.  (*See* Application for Leave to Amend his Response to GEICO's Motion to Clarify Damages, **EXHIBIT 19**.)

30.    Then, on August 1, 2017, Plaintiff served GEICO with his Initial Disclosures claiming actual and punitive damages in the total amount of $70,000.00 (inexplicably, Plaintiff's claimed damages were $4,000.00 less than the settlement demand previously made).[6]  (*See* Correspondence from R. Carpenter to E. Rooney, dated August 1, 2017, with attachments, **EXHIBIT 29**.)

31.    To date, Plaintiff has not stipulated that his damages against GEICO will not/cannot exceed $75,000.00.

---

[6]GEICO submits this serves as further evidence of both the frivolity of this lawsuit and the games Plaintiff is playing to avoid federal jurisdiction.

## JURISDICTION

32.      "'Federal Courts are courts of limited jurisdiction.  They possess only the power authorized by the Constitution and statute . . . .'" *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  For a federal court to have jurisdiction over a case or controversy, there must exist a federal question or diversity jurisdiction.

33.      At the time the Petition was filed, neither federal question jurisdiction nor diversity jurisdiction existed. First, there were no allegations that the Constitution or any federal statute had been violated.  Second, Plaintiff's Petition did not allege damages in excess of $75,000.00. (*See generally,* Petition, **EXHIBIT 2**.)

34.      However, as discussed below, at the hearing that took place on July 27, 2017, through the voluntary actions of Plaintiff, this case became removable.

## THE CITIZENSHIP OF THE PARTIES

35.      At the time of filing, the relevant time period, upon information and belief, Plaintiff was a resident and citizen of the State of Oklahoma.  *See Groupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004) (stating that jurisdiction depends upon the state of things at the time of filing).  Plaintiff was not a citizen of the State of Indiana or California.  (*See* Petition, unnumbered introductory paragraph, **EXHIBIT 2**.)

36.      For purposes of diversity jurisdiction, a corporation shall be deemed a citizen of any State in which it has been incorporated and the State where it has its principal place of business. (*See* 28 U.S.C. § 1332(c).)  While Congress never exactly defined "principal place of business," the Supreme Court has held that a corporation's principal place of business is presumed to be the place of the corporation's "nerve center."  *Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010).

37.     At the time of filing, GEICO was a foreign corporation, incorporated under the laws of the State of Maryland with its "nerve center" or "principal place of business" in Washington D.C. (*See* NAIC Company Demographics for GEICO Casualty Company, **EXHIBIT 30**.)  Thus, GEICO was deemed to be a citizen of the State of Maryland and the District of Washington D.C.  GEICO was not a citizen of the State of Oklahoma.

38.     As Plaintiff and GEICO are citizens of different states, the complete diversity requirement of 28 U.S.C. § 1332 is met.

**THE AMOUNT IN CONTROVERSY EXCEEDS
THAT REQUIRED BY 28 U.S.C. § 1332 FOR DIVERSITY JURISDICTION**

39.     Diversity jurisdiction also requires that the amount in controversy exceeds $75,000.00.  *See* 28 U.S.C. § 1332.  While Plaintiff's Petition, on its face, does not demand damages in excess of $75,000.00, it is well recognized that a plaintiff "should not be permitted to ostensibly limit their damages to avoid federal court only to receive an award in excess of the federal amount in controversy requirement."  *Morgan v. Gay*, 471 F.3d 469, 477 (3d Cir. 2006).

40.     In *Dart Cherokee Basin Operating Co., LLC v. Owens*, the United States Supreme Court held that "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  135 S.Ct. 547, 553 (2014); *see also Coco-Cola Bottling of Emporia, Inc. v. South Beach Beverage Co., Inc.*, 198 F.Supp.2d 1280, 1285 (D.Kan. 2002); *Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.*, No. 04-6154, 149 Fed.Appx. 775, 776 (10th Cir. September 8, 2005) (unpublished) (stating removal is proper if the defendant identifies "allegations in the petition establishing the amount in controversy or 'set forth in the notice of removal itself, the '*underlying facts*' supporting [the] assertion that the amount in controversy exceeds $50,000.00 [now $75,000.00].'").

41.     As the Western District of Oklahoma has explained, "the United States Supreme Court made it clear that 'a defendant's notice of removal need include only a short and plain statement with a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain any evidentiary submissions." *Whisenant v. Sheridan Production Co., LLC*, No. CIV-15-81-M, 2015 WL 4041514 at *2 (W.D. Okla. Jul. 1, 2015).

42.     If the plaintiff contests the defendant's allegation concerning the amount in controversy, "28 U.S.C. § 1446(c)(2)(B) instructs that '[r]emoval is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Dart Cherokee Basin Operating Co.*, 135 S.Ct. at 553-54 (quoting 28 U.S.C. § 1446(c)(2)(B)). When a plaintiff challenges the amount in controversy alleged by the defendant, "**both sides** submit proof and the court decides" whether the requirement has been satisfied. *Id.* at 554 (emphasis added).

43.     Here, regardless of what Plaintiff claims, it is clear that he is actually seeking damages in excess of that required for diversity jurisdiction. To begin with, as the Court is well aware, bad faith actions seeking damages in unspecified amounts frequently result in awards in excess of $75,000.00, exclusive of interest and costs. Thus, Plaintiff ***could*** recover in excess of $75,000, and therefore, the amount in controversy requirement is met.

44.     However, if that is not sufficient, prior to removing this lawsuit to federal court, GEICO served Plaintiff with a Motion to Clarify Damages. (*See generally*, GEICO's Motion to Clarify Damages, **EXHIBIT 4**; GEICO's Reply in Support of Its Motion to Clarify Damages, **EXHIBIT 13**.) In its Motion, GEICO asserted that Plaintiff's Petition did not comply with Oklahoma's Pleading Code because Plaintiff did not plead his damages with specificity, as required by 12 O.S.

§ 2008(A)(2).  (*See generally*, GEICO's Motion to Clarify Damages, **EXHIBIT 4**; GEICO's Reply in Support of Its Motion to Clarify Damages, **EXHIBIT 13**.)

45.     GEICO further argued that pursuant to 12 O.S. § 2009(H), because Plaintiff's claimed damages are "less than the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code" GEICO had a statutory right to file "for purposes of establishing diversity jurisdiction only, a Motion to Clarify Damages prior to the pretrial order to require the plaintiff to show by a preponderance of the evidence that the amount of damages, if awarded, will not exceed the amount required for diversity."  And, if Plaintiff failed to meet his burden, Plaintiff was required by law to "amend his or her pleadings in conformance with paragraph 2 of subsection A of Section 2008 of this title."  12 O.S. § 2009(H); *See also*, GEICO's Motion to Clarify Damages, **EXHIBIT 4**; GEICO's Reply in Support of Its Motion to Clarify Damages, **EXHIBIT 13**.)

46.     Plaintiff failed to present any evidence demonstrating that his damages would not exceed the amount required for diversity jurisdiction.  Instead, Plaintiff simply informed the Court that he was willing to settle this matter for $74,000.00.  (*See generally*, Plaintiff's Response to GEICO's Motion to Clarify Damages, **EXHIBIT 8**.)

47.     However, as GEICO pointed out in its Reply in Support of its Motion to Clarify Damages, Oklahoma law does not cap the damages on bad faith claims at an amount less than $75,000.00 and Plaintiff's punitive damages claim placed at least the greater of $100,000.00 or the amount of the actual damages awarded at controversy.  *See* 23 O.S. §  9.1; GEICO's Reply in Support of its Motion to Clarify Damages, **EXHIBIT 13**.  Thus, GEICO asserted the only way Plaintiff could demonstrate that the amount in controversy did not exceed $75,000.00 was for Plaintiff to stipulate that if the jury awarded him damages in excess of $75,000.00, Plaintiff would

agree to a remittitur reducing the award to $75,000.00.  (*See* GEICO's Reply in Support of Its Motion to Clarify Damages, **EXHIBIT 13**. )

48.     On July 27, 2017, GEICO's Motion to Clarify was heard by the state court. (*See* OSCN Docket Sheet, **EXHIBIT 1**.)

49.     At that hearing Plaintiff's counsel argued that GEICO's Motion was premature because Plaintiff could not determine the value of his claim until he had an opportunity to conduct discovery.  According to Plaintiff's counsel, discovery may reveal that Plaintiff's claim was highly valuable or the claim had little to no value.  In an effort to resolve this "conundrum" for Plaintiff and to conclusively establish that the amount in controversy did not exceed $75,000.00, GEICO offered to withdraw its Motion to Clarify if Plaintiff would enter into a stipulation that if the jury awarded him damages in excess of $75,000.00, Plaintiff would agree to a remittitur reducing the award to $75,000.00.  (*See* Affidavit of E. Rooney, **EXHIBIT 26**.)

50.     Plaintiff refused to agree to the proposed stipulation.  (*See* Affidavit of E. Rooney, **EXHIBIT 26**.)

51.     The minute Plaintiff refused to stipulate that his damages would not/could not exceed $75,000.00, this case became removable.

52.     Subsequently, GEICO provided Plaintiff with another opportunity to demonstrate that his claimed damages did not place in excess of $75,000.00 at issue.  More specifically, GEICO's counsel sent Plaintiff's counsel correspondence again requesting that Plaintiff stipulate that his damages would not/could not exceed $75,000.00.  In exchange for said stipulation, GEICO offered to withdraw its Motion to Clarify Damages. (*See* Correspondence from E. Rooney to R. Carpenter, dated July 28, 2017, **EXHIBIT 27**.)

53.     Plaintiff's counsel failed to respond to GEICO's counsel's request.  Instead, a few hours later, Plaintiff's counsel informed GEICO that Plaintiff would be requesting leave to file an Amended Response to GEICO's Motion to Clarify Damages to assert additional arguments in objection to GEICO's Motion to Clarify Damages.  (*See* Correspondence from R. Carpenter to E. Rooney, dated July 28, 2017, **EXHIBIT 28**.)  Plaintiff's continued objection only serves as further evidence of Plaintiff's true intentions.

54.     On July 31, 2017, over GEICO's objection (*see* Correspondence from E. Rooney to R. Carpenter, dated July 28, 2017, **EXHIBIT 29**), Plaintiff filed an Application for Leave to Amend his Response to GEICO's Motion to Clarify Damages.  (*See* Application for Leave to Amend his Response to GEICO's Motion to Clarify Damages, **EXHIBIT 19**.)

55.     Later that same day, Plaintiff served GEICO with his Initial Disclosures arbitrarily claiming actual and punitive damages totaling $70,000.00.  (*See* Correspondence from R. Carpenter to E. Rooney, dated August 1, 2017, with attachments, **EXHIBIT 30**.)

56.     Simply stated, no matter what documents Plaintiff presents the Court, Plaintiff's refusal to stipulate that his damages will not exceed $75,000.00, combined with his continued and strenuous objection to complying with Oklahoma's Pleading Code, makes it patently obvious that Plaintiff is playing games to avoid this Court's jurisdiction.

57.     The Honorable Ronald White's Order in *Murchison v. Progressive Northern Insurance Company*, 564 F.Supp.2d 1311 (2008), is highly instructive in this matter.  In that case, the plaintiff filed suit alleging breach of contract, negligence and bad faith against his underinsured motorist carrier.  In that case, the plaintiff alleged damages in excess of $10,000.00.  To ascertain a better understanding of the damages sought, the defendant insurer served the plaintiff with a request for admission that read:

> Admit that Your (sic) total alleged damages against Progressive do
> not exceed $75,000."

*Id.* at 1313.

58.     The plaintiff objected to the request asserting that it violated Oklahoma's Pleading

Code, but ultimately, the plaintiff denied the request.  This, the defendant argued, confirmed that the

plaintiff was seeking in excess of $75,000.00, but the plaintiff was hiding behind the liberal standard

of Oklahoma's Pleading Code to avoid federal jurisdiction.  The defendant insurer removed the case

to federal court.  Subsequently, the plaintiff filed a motion to remand.  The plaintiff's motion was

denied.  In doing so, Judge White stated:

> The court notes that, while it is perfectly willing to whittle
> down its docket by remanding cases, it is growing a bit weary
> of plaintiffs attempting to hide behind the Oklahoma pleading code
> to avoid federal jurisdiction.

*Id.*

59.     Judge White continued:

> Moreover, the court does not buy Plaintiff's argument that
> further discovery is needed to determine the amount of her own
> damages. The court reminds the Plaintiff that an award of actual
> damages is designed to reasonably compensate her for what she
> has suffered. *See CitiFinancial Mortg. Co., Inc. v. Frasure*, No.
> 06-CV-160, 2008 WL 2199496, at *10 (N.D.Okla. May 23, 2008).
> Perhaps Plaintiff believes she is in need of further discovery to
> find some bad conduct by Defendant. Yet, objectionable conduct
> by a defendant, no matter how depraved, has no affect on the
> amount of actual damages. Who better to know the amount of
> damages she has suffered than Plaintiff herself? The court is not sure
> how further discovery will assist Plaintiff in ascertaining the amount
> of her own damages, and Plaintiff has provided the court with no
> guidance to solve that riddle. Thus, the court fears her professed
> ignorance of the actual amount in controversy is simply part of her
> attempt to play hide the ball and avoid federal jurisdiction. The court
> is not amused.

*Id.* at 1315-16.

60.     Finally, Judge White concluded:

> Accordingly, this court will no longer blithely ignore evasive machinations designed entirely to thwart federal jurisdiction. An evasive answer to a request for admission regarding the amount of damages will now and henceforth be construed by this court against the evading party. The court will, of course, take the facts of each case individually. Unfortunately many such cases are just like this one: **The Plaintiff knows the amount sought exceeds $75,000.00. The Defendant knows the amount sought exceeds $75,000.00. The court knows the amount sought exceeds $75,000.00. Indeed, the court knows that the parties themselves know it.**

*Id.* at 1316 (emphasis added).

61.     The present case is virtually identical to the facts presented to Judge White in *Murchison*:

> (a) Plaintiff plead damages in an amount less than that required for diversity jurisdiction;

> (b) GEICO, the defendant insurer, requested that Plaintiff clarify his damages to ascertain whether diversity jurisdiction exists;

> (c) Plaintiff objected (and continues to object) to GEICO's request that he clarify his damages and prove, as required by Oklahoma's pleading code, that his damages, if awarded, could not exceed $75,000.00;

> (d) Plaintiff has argued that he cannot calculate his damages without first conducting discovery; and,

> (e) GEICO requested that Plaintiff stipulate that his damages would not exceed $75,000.00, but Plaintiff refused.

62.     Plaintiff's refusal to stipulate that his damages would not/could not exceed $75,000.00, like the *Murchison* plaintiff's refusal to admit that his total damages did not exceed $75,000.00, establishes the amount in controversy exceeds that required for diversity jurisdiction.

63.     GEICO acknowledges that, unlike *Murchison*, Plaintiff's Petition claims that his damages not to exceed $75,000.00. However, this is a distinction without a difference. The fact that

Plaintiff is unwilling to place a cap on the damages that he may recover in this lawsuit, regardless of the amount pled or the amount stated in his Initial Disclosures, demonstrates Plaintiff is playing the same game as the *Murchison* plaintiff.  Plaintiff will say and do anything required to suggest that the amount in controversy does not exceed $75,000.00, but Plaintiff is not willing to go the extra step and stipulate that his damages cannot exceed $75,000.00.  Said differently, Plaintiff wants to have his cake and eat it to.  Plaintiff wants to remain in state court, but Plaintiff is not willing to give up the potential for an award that exceeds that required for diversity jurisdiction.

64.     Further still, Plaintiff has also asserted a claim for punitive damages against GEICO. (*See* Petition, ¶ 27, **EXHIBIT 2**.)

65.     When punitive damages are alleged, the Court may consider those damages in determining whether the requisite amount in controversy exists.  As the Seventh Circuit has explained:

> [w]here punitive damages are required to satisfy the jurisdictional amount in a diversity case, a two-part inquiry is necessary.  The first question is whether punitive damages are recoverable as a matter of state law.  If the answer is yes, the court has subject matter jurisdiction unless it is clear "beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount."

*Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000) (quoting *Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211-12 (7th Cir. 1995)); *See also Bell v. Preferred Life Assur. Soc'y of Montgomery, Ala.*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."); *Woodmen of World Life Ins. Soc'y v. Mangarnaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) ("Punitive damages may be considered in determining the requisite jurisdictional amount."); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that

punitive damages are part of the amount in controversy in a civil action."); *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) ("[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied."); *Ryan v. State Farm Mut. Auto. Ins. Co.*, 934 F.2d 276, 277 (11th Cir. 1991) (holding that under a specific Georgia punitive damages statute it was possible for a jury to award an amount above the minimum amount in controversy requirement, and therefore, federal jurisdiction existed); *Kahal v. J.W. Wilson & Associates, Inc.*, 673 F.2d 547, 548 (D.C. Cir. 1982) ("A Court must consider claims for both actual and punitive damages in determining jurisdictional amount."); *Shaffer v. Skechers, USA, Inc.*, No. CIV-09-167-D, 2009 WL 3837408 at *3 (W.D. Okla. Nov. 16, 2009); *Flowers v. EZPawn Okla., Inc.*, 307 F.Supp.2d 1191, 1198 (N.D. Okla. 2004).

66.　　Here, punitive damages have been alleged and are allowed by state law. *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1105 (Okla. 2005) ("As applicable to this case, 23 O.S. 2001, § 9.1 provides that a jury may award punitive damages if it finds, by clear and convincing evidence, that an insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured [§ 9.1(B)] or an insurer has intentionally and with malice breached said duty. § 9.1(C)(2)."). Therefore, as stated in *Del Vecchio*, the question is whether "it is clear beyond a legal certainty that the plaintiff would **under no circumstances** be entitled to recover the jurisdictional amount." 230 F.3d at 978 (emphasis added, internal quotations omitted). The answer to this question *must* be no.

67.　　In Oklahoma, punitive damages are controlled by statute. *See* 23 O.S. § 9.1. There are three categories of punitive damages. Each category increases the amount a plaintiff can potentially recover. Plaintiff's Petition alleges facts that implicates at least Category I Punitive Damages. Category I punitive damages allows a jury, upon finding that "the defendant has been guilty of reckless disregard for the rights of others", to award punitive damages in an amount not to

exceed the greater of $100,000.00, or the amount of actual damages awarded.  23 O.S. § 9.1(B).

Therefore, Plaintiff's request for punitive damages placed in excess of $75,000.00 in controversy.

68.    This Court's ruling in *Singleton v. Progressive Direct Insurance Company*, 49

F.Supp.3d 988 (N.D. Okla. 2014), is particularly instructive on this issue.  In that case, the plaintiff

was involved in an automobile accident and sought UM/UIM benefits from her insurer.  The plaintiff

submitted a claim to her insurer and demanded policy limits.  *Id.* at 990.  After investigating and

evaluating her claim, the plaintiff's insurer tendered the policy limits of her UM/UIM coverage.  *Id.*

Despite the tender of policy limits, the plaintiff filed a petition in Tulsa County District Court

alleging claims for breach of contract and bad faith.  *Id.*  The plaintiff also sought punitive damages.

As in this case, the plaintiff did not make a demand for a specific sum.  *Id.*  Instead, the plaintiff

alleged that she suffered damages in excess of $10,000.00.  *Id.*

69.    When the plaintiff continued to pursue her claims against her insurer, the insurer

timely removed the action to this Court.  The insurer asserted the plaintiff's policy limits demand

combined with her request for punitive damages demonstrated to a preponderance of the evidence

that she sought to recover in excess of $75,000.00.  *Id.* at 993. The plaintiff moved to remand the

case.  The court denied the plaintiff's motion.  *Id.* at  993-94.  In doing so, the court concluded:

> Considering the petition and notice of removal together, the court
> finds that [the insurer] has not merely offered a "conclusory
> statement" involving punitive damages, but has affirmatively
> established that the amount in controversy exceeds the jurisdictional
> limit.  Where [the plaintiff] asked for actual damages exceeding
> $10,000, a punitive damages award of $65,000 or more would reach
> the jurisdictional threshold.  This would require no more than a
> single-digit ratio of punitive damages to actual damages, even after
> [the insurer] deflated the denominator with a $100,000 payment just
> prior to the initiation of this action. [The plaintiff's] petition,
> meanwhile, alleges that [the insurer] failed to properly investigate her
> claim, delayed payments or withheld them altogether, and used its
> unequal bargaining position to overwhelm and take advantage of her,
> though it knew that she was entitled to receive $100,000 in UIM

18

benefits under her policy.  **These allegations supply the required facts supporting [the insurer's] assertion that <u>the value of [the plaintiff's] claim for punitive damages</u> exceeds the amount required to surpass the jurisdictional threshold.**

*Id.* at 994 (emphasis added).

70.     Here, as in *Singleton*, Plaintiff asserts claims for punitive damages.  However, as GEICO has demonstrated from Plaintiff's actions it is clear that at trial he intends to seek damages in excess of $75,000.00.  If Plaintiff did not intend to seek damages in excess of $75,000.00, Plaintiff would have had no qualms with the stipulation requested by GEICO.  *See Murchinson*, 564 F.Supp 2d at 1316.  Plaintiff's refusal to stipulate that his damages cannot exceed $75,000.00 can result in only one conclusion:  Plaintiff is actually seeking damages in excess of $75,000.00

71.     GEICO has demonstrated that amount in controversy exceeds $75,000.00 and Plaintiff ***could*** recover in excess of $75,000.00.  Therefore, the amount in controversy is also met.

### REMOVAL TO THIS COURT IS TIMELY AND APPROPRIATE

72.     Title 28 U.S.C. 1446, provides in pertinent part:

> [I]f the case stated by the initial pleadings is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is on which is or has become removable.

28 U.S.C. § 1446(b)(3).

73.     Courts so construing this statute have stated that the defendant's right to remove "requires clear and unequivocal notice from the pleading itself, or subsequent 'other paper.'" *Misner v. State Farm Fire & Cas. Co.*, No. CIV-14-873-D,2014 WL 6879094, at *20 (W.D. Okla. Dec. 4, 2014) (citation omitted). This "clear and unequivocal" requirement allows a defendant to "intelligently ascertain removability so that in his [] [notice] for removal he can make a simple and

short statement of facts." *Huffman*, 194 F.3d at 1078 (citations omitted).  It also must not have a

"double design." *Id.* (citation omitted).

74.    In *Huffman v. Saul Holdings Ltd. Partnership*, 194 F.3d 1072 (10 Cir. 1999), the

Tenth Circuit addressed when the removal period, relying on "other papers" begins stating:

> A majority of the federal district courts have not required receipt of
> an actual written document. Instead, they have held that a discovery
> deposition does satisfy the requirement. *See, e.g., Effinger v. Philip
> Morris, Inc.*, 984 F.Supp. 1043, 1047–48 (W.D.Ky.1997) (collecting
> cases); *Haber v. Chrysler Corp.*, 958 F.Supp. 321, 326
> (E.D.Mich.1997); *Riggs v. Continental Baking Co.*, 678 F.Supp. 236,
> 238 (N.D.Cal.1988); *Smith v. International Harvester*, 621 F.Supp.
> 1005, 1008 (D.Nev.1985); *see also* 28 U.S.C.A. § 1446 (Commentary
> on 1988 Revision) ("The ['other paper'] that reveals the phoniness of
> the nondiverse defendant's joinder may be, e.g., the deposition of
> some nonparty witness."); 14C Charles Alan Wright et al., Federal
> Practice and Procedure § 3732 at 300–10 (3d ed. 1998) ("The federal
> courts have given the reference to 'other paper' an embracive
> construction.... Various discovery documents such as depositions ...
> usually are accepted as 'other paper' sources that initiate a new
> thirty-day period of removability.") (footnotes omitted). *See also
> S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996)
> (holding that a deposition transcript is an "other paper").
>
> For several reasons, we adopt the majority rule. The intent of the
> statute is to "mak[e] sure that a defendant has an opportunity to assert
> the congressionally bestowed right to remove upon being given notice
> in the course of the case that the right exists." Wright, *et. al, supra* at
> 306. Unquestionably, information elicited during a deposition may
> serve that purpose. For purposes of the removal statute, deposition
> testimony stands on equal footing with written forms of discovery,
> such as interrogatories and requests for information.
>
>> A defendant cannot forgo one recognized means of
>> obtaining information related to jurisdiction for
>> another and then argue that the manner in which the
>> information was provided, which was in compliance
>> with defendant's request, precludes imputing
>> knowledge of the information to the defendant. Such
>> manipulation would provide a windfall for the
>> defendant which is clearly contravened by the removal
>> statute's emphasis on effecting removal as soon as
>> possible.

20

*Golden Apple Management Co. v. GEAC Computers, Inc.*, 990 F.Supp. 1364, 1368 (M.D.Ala.1998) (citation omitted). We hold that deposition testimony, taken under state rules of procedure during the course of litigation in the state court, qualifies as an "other paper" under § 1446(b).

Because the applicable rule of civil procedure does not provide a deadline for obtaining a transcript of a deposition, *see* Fed.R.Civ.P. 30(b)(2), (f)(2), the date of receipt of a transcript may also be subject to manipulation. Accordingly, the removal period commences with the giving of the testimony, not the receipt of the transcript.

75.   Here, like the deposition testimony at issue in *Huffman*, Plaintiff's counsel's statements at the July 27, 2017 hearing constitutes "clear and unequivocal notice" that the amount in controversy exceeds that required for federal jurisdiction.  As thirty (30) days have not elapsed since that hearing and a year has not elapsed since the filing of this lawsuit, GEICO's removal is timely.

76.   Next, federal statute requires that none of the parties served as defendants be citizens of the state in which the action is brought.  *See* 28 U.S.C. § 1441(b).  GEICO, the only named defendant, is not a citizen of the State of Oklahoma, the state in which this action was brought.

77.   This action has been removed to the proper Federal District Court.  The pertinent language of 28 U.S.C. § 1446(a) provides that the defendant shall file the notice of removal in "the district court of the United States for the district and division within which such action is pending." 28 U.S.C. § 1446(a).  Currently, this action is pending in the District Court of Tulsa County, State of Oklahoma.  The Northern District of Oklahoma includes the County of Tulsa County.  *See* 28 U.S.C. § 116(a).  Therefore, removal to this Court is proper.

78.   Pursuant to 28 U.S.C. § 1446(d), GEICO will serve written notice of the filing of this Notice of Removal upon Plaintiff, and GEICO has filed a copy of the Notice of Removal with the Clerk of the District Court in and for Tulsa County, State of Oklahoma.

WHEREFORE, Defendant, GEICO Casualty Company, removes this action from the District Court in and for Tulsa County, State of Oklahoma, to the United States District Court for the Northern District of Oklahoma.

Respectfully submitted,

_s/ Erin J. Rooney_
Erin J. Rooney, OBA No. 31207
PIGNATO, COOPER, KOLKER & ROBERSON, P.C.
Robinson Renaissance Building
119 North Robinson Avenue, 11th Floor
Oklahoma City, Oklahoma 73102
Telephone:     405-606-3333
Facsimile:      405-606-3334
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Richard L. Carpenter, Esquire

_s/ Erin J. Rooney_
For the Firm